IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 12-792 YGR |
| Plaintiff, | **ORDER**<br>**(I) DENYING A.**<br>**CERVANTES'S MOTION TO** |
| v. | **SEVER; AND**<br>**(II) GRANTING IN PART** |
| ANDREW FRED CERVANTES, | **MOTION TO CONTINUE** |
| Defendants. | **TRIAL DATE** |
| / | RE: DKT. NOS. 732, 773 |

Defendant Andrew Cervantes ("A. Cervantes") moves to sever his trial from his codefendants (Dkt. No. 732, "MTS") pursuant to Federal Rule of Criminal Procedure 14. The government opposes. A. Cervantes also moved to continue the trial date into 2017. (Dkt. No. 773, "MTC.") The government previously and orally indicated that it does not oppose a continuance. Counsel for defendant Henry Cervantes has voiced his objection to continuing the trial date.

The Court has considered the papers submitted, the record in this case, and the arguments of counsel. Based thereon, good cause appearing, and for the reasons set forth below, defendant A. Cervantes's motion to sever is **DENIED** and the motion to continue the trial date is **GRANTED IN PART**. The Court hereby **CONTINUES** the trial currently scheduled to commence on January 11, 2016 to begin on June 15, 2016.[1] A separate trial scheduling order shall issue.

I. **PROCEDURAL HISTORY**

A. Cervantes previously was charged by the government with one count under 21 U.S.C. § 846 – conspiracy to possess with intent to distribute methamphetamine. *See United States v. Cervantes*, No. 15-cr-00230-YGR, Dkt. Nos. 1 (March 2015 complaint), 8 (April 2015 indictment) (collectively, the "Initial Case"). As defendant A. Cervantes concedes, the one count in the Initial

---

[1] A. Cervantes is hereby **SET** for trial on this date, along with his three codefendants.

Case essentially mirrors Count Twenty-One in the instant case. (*Cf.* Dkt. No. 724, Third Superseding Indictment, "3SI"; Initial Case Dkt. No. 8.)

On April 23, 2015, the government filed a notice of related case in the Initial Case and this case, and the Court ordered relation the next day. (Dkt. No. 737, "Mtn. Relate," at 2; Initial Case Dkt. No. 10.) Trial in the instant case was scheduled to begin on January 11, 2016. Plea negotiations in the Initial Case began immediately. According to the government, it produced discovery to defendant A. Cervantes on April 28, 2015 and on May 22, 2015. (Mtn. Relate at 2, 8.) Apparently, plea negotiations continued longer than anticipated, proceeding into the summer months. In addition to the discovery previously provided by the government, on August 26, 2015, defense counsel attests that she "received 292 recorded telephone calls and approximately 1,800 pages of discovery." (Dkt. No. 750, "McClure Decl.," ¶ 6.) On September 10, 2015, the Court ordered the government to file a Rule 13 joinder motion within two weeks or not at all. (*See* MTS at 4.) On September 17, 2015, the grand jury issued the Third Superseding Indictment against four defendants – including A. Cervantes – charging twenty-one counts and including a forfeiture allegation. (*See* 3SI.)

The Third Superseding Indictment stems from the affairs of an alleged racketeering enterprise known as Nuestra Familia, which is said to operate inside and outside of prison walls.[2] Count One charges four defendants, including A. Cervantes, with a violation of 18 U.S.C. § 1962(d). (3SI ¶¶ 1-28.)[3] Count Twenty-One charges three defendants, including A. Cervantes, with a violation of 21 U.S.C. §§ 846, 841, and 841(b)(1)(A) – conspiracy to violate § 841(a)(1) by distributing and possessing with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a mixture or substance containing a detectable amount of cocaine, and a mixture or substance containing a detectable amount of heroin.

---

[2] In ruling on an earlier set of pretrial motions, the Court provided a summary of this case. (*See* Dkt. No. 687 at 2-3.) The Court does not recount the salient allegations as set forth therein.

[3] Section 1962 is commonly known as the Racketeer Influenced and Corrupt Organizations Act, or "RICO." Sub-section (d) specifically prohibits any person from conspiring to violate RICO. *See* 18 U.S.C. § 1962(d).

(3SI at ¶ 59.) Specifically, Count Twenty-One alleges a drug conspiracy between January 2011 and August 2012. (*Id.*) A. Cervantes is not charged in Counts Two through Twenty.

On September 22, 2015, A. Cervantes was arraigned on the Third Superseding Indictment and the same counsel was appointed thereon. (*See* Dkt. No. 726.) On September 29, 2015, A. Cervantes filed the instant motion to sever. The following day, defense counsel advised that she had received "approximately 28,445 pages of discovery" and electronic files from the government. (McClure Decl. ¶ 7.) On October 5, 2015, counsel avers that she received seven additional disks of discovery, three marked re: 2003 NF case. (*Id.*)[4] While this latest production had to be returned to the government for appropriate redactions, the government advised the Court during a hearing that it offered to allow defense counsel to retain and review the production under an "attorneys-eyes only" protective order until the redactions could be finalized.

Meanwhile, in July and August 2015, the parties litigated the adequacy of the government's Rule 16 disclosures. As a result, the government was ordered to supplement certain disclosures, which occurred thereafter. Rule 16 objections and *Daubert* challenges resulted in a hearing on October 13, 2015, relating to counts for which A. Cervantes has not been charged, other than through the RICO count. Defense challenges to gang experts, which are likely to concern A. Cervantes, have not been fully resolved albeit they did result in supplemental disclosures.

The government filed its exhibit and witness lists on October 2, 2015 (*see* Dkt. Nos. 739, 740), pursuant to the operative scheduling order (Dkt. No. 545). Then, on October 19, 2015, the government provided all defendants with the names of certain witnesses previously designated as "protected" and additional discovery related thereto. With respect to those witnesses who retained the "protected" designation, the government provided the defendants with an outline of the breadth of documents and evidence, if any, being withheld for witness safety reasons.

Given the Court's oral ruling that the motion to sever was denied, on October 22, 2015, A. Cervantes filed a separate motion to continue the trial date.

\\

---

[4] The exact number of pages is disputed as apparently there are gaps in the Bates' ranges.

## II. MOTION TO SEVER

### A. Legal Standard

Under Rule 8(b), "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Cr.P. 8(b).[5] When defendants are indicted together, the federal system evinces a preference for joint trials. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993); *see also United States v. Lane*, 474 U.S. 438, 449 (1986) (recognizing that joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial") (quoting *Bruton v. United States*, 391 U.S. 123, 134 (1968)). Only where joinder would create "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" must the Court grant severance. *Zafiro*, 506 U.S. at 539. Neither a joint trial with more culpable codefendants nor an improved possibility of acquittal in a separate trial is sufficient by itself to warrant severance. *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004) (citing *United States v. Baker*, 10 F.3d 1374, 1388 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000)).

Nonetheless, despite the propriety of joinder under Rule 8(b), a court may order severance if it finds sufficient prejudice exists to one or more of the defendants. Rule 14 provides:

> If the joinder of . . . defendants . . . for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed.R.Cr.P. 14(a). Four factors are relevant in evaluating a request for severance of defendants:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendant could show, with

---

[5] The Court finds, and A. Cervantes does not dispute, that joinder of A. Cervantes with the other defendants would not violate Rule 8(b), because the Third Superseding Indictment alleges that the defendants participated in the same series of acts for Count One.

4

some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Fernandez*, 388 F.3d at 1241. "The first two factors are the most important to this inquiry." *Id*.

**B. Analysis**

**1. Factor One: Jury's Ability to Compartmentalize the Evidence**

In *Fernandez*, the Ninth Circuit applied the four-factor framework described above and upheld a denial of severance where a jury was called upon to compartmentalize evidence amongst eleven codefendants. *See id.* at 1242. There, in a trial of a different prison/jail organization called the "Mexican Mafia" or "Eme," the counts alleged "different conspiracies with different goals," and the trial lasted four months. *Id.* at 1242, 1246.

This case involves a series of distinct events with an overarching allegation of conspiracy. In that regard, this case presents fewer complications than *Fernandez*. Because the events happened at distinct times and places, and the roles of each of the defendants are sufficiently defined, the jurors in this case will readily be able to compartmentalize the evidence as against each of the four defendants. More specifically, the counts in the instance case can be grouped together based on separate events occurring in separate locations. With respect to A. Cervantes, he was in federal custody at the time. Thus, the government's case against him is distinct.

In addition, this case presents one set of overarching RICO allegations as to all the defendants in Count One, further weighing in favor of a joint trial. As the Ninth Circuit in *Fernandez* noted, "a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *Id.* at 1242. The Third Superseding Indictment alleges – as to all four defendants – Count One for racketeering activity including "acts and threats involving murder, . . . robbery, . . . dealing in controlled substances, . . . [and] robbery/extortion affecting commerce . . .

." (3SI ¶ 17)[6] The government has the burden to prove the existence of, and A. Cervantes's knowing association with, a RICO conspiracy – along with all three co-defendants. (*See* Dkt. 737, "MTS Oppo.," at 7.)[7] Thus, concerns of judicial efficiency weigh heavily in favor of a joint trial in this case.

Defendant A. Cervantes cites the risk of prejudice in being tried on two conspiracy counts with codefendants charged with an additional nineteen counts that include homicides. He argues that evidence introduced against his codefendants at trial will "spill over" to his case and cause prejudice. A. Cervantes's "spillover" argument assumes, without showing, that the government will introduce evidence against the other defendants that otherwise would be inadmissible in a separate trial of A. Cervantes. (*See* Dkt. 749, "MTS Reply," at 3 ("it is *not clear whether* any evidence of three murders in California would be admissible against him" (emphasis supplied)). With respect to Count One, the government seeks to prove the existence of, and A. Cervantes's knowing association with, a RICO conspiracy, and alleges racketeering activity that included, among others, "acts and threats involving murder." (*See* MTS Oppo. at 7; 3SI ¶ 17) Even assuming some evidence is admitted against the other defendants that otherwise would not be admissible against A. Cervantes, it does not necessarily follow that a jury could not reach a reliable verdict as to A. Cervantes. To hold otherwise would contravene *Fernandez* by always subjecting a webbed conspiracy to severance.

A. Cervantes's reliance on *United States v. DeRosa*, 670 F.2d 889 (9th Cir. 1982) does not persuade. There, two defendants were charged with various narcotics violations, and with associating with two other codefendants' "narcotics enterprise, and participat[ing] in the affairs of

---

[6] *Cf. Fernandez*, 388 F.3d at 1242 (noting that the district court severed cases of death-eligible defendants on the basis of the "big difference between violence and murder and attempted murder, and narcotics charges or conspiracy charges involving just narcotics" (quotations omitted)).

[7] A. Cervantes cites Alberto Larez's basis for previously seeking severance – that the alleged double homicide on Coolidge Avenue in Oakland was unrelated to Nuestra Familia. But this Court denied that motion on a basis that similarly applies here. (*See* Dkt. 687 at 33–34.)

6

that enterprise through a pattern of racketeering acts . . . ." *Id.* at 892.[8] The RICO count "was the sole basis for trying those defendants jointly with [the other two codefendants] . . . ." *Id.* at 897 (footnote omitted). The trial court dismissed the RICO count at the close of the government's case, but denied subsequent motions for severance. *Id.* On appeal, the Ninth Circuit recognized: "The hazards of joinder may be magnified when a RICO count was used to establish joinder because there is a risk that 'the prejudicial effect of tarring a defendant with the label of 'racketeer' tainted the conviction on an otherwise valid count.'" *Id.* at 897 n.11 (quoting *United States v. Guiliano*, 644 F.2d 85, 89 (2d Cir. 1981)). The court also distinguished between "a defendant whose role is limited to one or two of his co-defendants' many transactions" and one "with a limited role in each of a number of transactions or incidents," noting that the "risk of prejudice is likely to be less" in the former scenario. *Id.* at 899 n.14. The court affirmed the denial of severance, reasoning, in part, that the evidence against the two defendants was "compelling" or "convincing," and that the

---

[8] Other cases A. Cervantes cites to argue the contrary are similarly not persuasive in this context:

In *United States v. Baker*, 98 F.3d 330 (8th Cir. 1996), a defendant was not charged with a conspiracy, but was tried with other codefendants who were so charged, and against whom coconspirator statements and other "very prejudicial and highly inflammatory" evidence otherwise not admissible in a separate trial of the defendant was therein admitted. *See id.* at 335. Here, by contrast, A. Cervantes is charged with a RICO conspiracy along with the other three defendants.

In *United States v. Davidson*, 936 F.2d 856 (6th Cir. 1991), a defendant was charged with only one of ten counts in an indictment, leading the Sixth Circuit to conclude he "suffered substantial prejudice from the spillover effect of the proof of . . . unrelated tax charges against [one] absent codefendant . . . ." *Id.* at 861. There, the defendant was charged with conspiracy to possess heroin and cocaine with intent to distribute. *See id.* at 856. "The charges against [an absent codefendant] included tax evasion and filing false income tax returns," *id.*, and proving the case against that codefendant "occupied a substantial portion of the four day trial and included an amended tax return [the codefendant] filed . . . which stated that his income was derived in part from 'narcotics,'" *id.* Here, although A. Cervantes is charged with only two of the twenty-one counts, Count One alleges racketeering acts including murder and robbery as to all four defendants. This Court has found a link among the charges against Henry Cervantes and Alberto Larez and the government's RICO theory. *See* Dkt. No. 687 at 31-34.

In *United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995), prejudice resulted when a jury heard testimony that a defendant on trial for tax evasion "was an adulterous, mentally abusive, and manipulating spouse." *Id.* at 853. That testimony "would have been inadmissible against [the defendant] under any theory of the Federal Rules of Evidence," but was admitted as to his codefendant, who argued diminished capacity. *Id.* at 853, 852. Here, however, A. Cervantes has not shown a basis to find that the evidence against his alleged coconspirators would prejudice him or his credibility in such a direct manner.

7

charges against them stemmed from "discrete simple transactions that the jury could readily distinguish from all the other defendants' dealings . . . ." *Id.* at 899 (footnote omitted); *see also id.* at 900 (referring to "convincing" evidence against second of the two defendants).

Here, the RICO count against all four defendants has not been dismissed. *Cf. id.* at 897 ("When, as here, the count that formed the original basis for joinder is dismissed, the trial court must be 'particularly sensitive to the possibility of . . . prejudice.'") (quoting *Schaffer v. United States*, 362 U.S. 511, 516 (1960)). Further, the concerns the Court raised in *DeRosa* related to evidence of a defendant's limited role in relation to codefendants' transactions, *id.* at 899 n.14, does not apply here. Count One alleges that A. Cervantes served in the role of "one of two 'overseers' within the federal faction of the Nuestra Familia from approximately 2011," and at one point "became the sole overseer of the [Nuestra Familia]." (3SI ¶ 15 (emphasis omitted).)[9] Although the Court must consider the possibility of impermissible guilt by association, *see DeRosa*, 670 F.2d at 898–900, the Court is confident in the jury's ability to compartmentalize the evidence against each defendant. This is especially so given the nature of the charges and the evidence in this case.[10] The risk of prejudice is not sufficient to warrant granting A. Cervantes's motion to sever.

///

---

[9] To the extent A. Cervantes suggests he later will move for a Bill of Particulars regarding the "conspiracy to commit murder" sentencing factor for Count One, this Order does not prevent him from filing such a motion. (*See* MTS at 14 n.3.) That said, the Court has ordered expedited informal measures to alleviate the need for such relief. To the extent A. Cervantes argues that the government lacks evidence linking him to other homicides, (*see, e.g.*, MTS Reply at 12), that argument does not affect this Court's decision on severance. *Cf. Fernandez*, 388 F.3d at 1226-27.

[10] Moreover, competing concerns for judicial efficiency are relevant here. *See Fernandez*, 388 F.3d at 1242. As an initial matter, the government notes that witnesses testifying in one trial may face safety risks before a second trial. (MTS Oppo. at 10.) A. Cervantes responds that the witnesses set to testify against A. Cervantes on the drug conspiracy charge already have been identified and that there is no basis for concluding that witnesses to the homicides could testify in a separate trial against A. Cervantes. (MTS Reply at 11-12) As noted above, however, A. Cervantes does not account for potential duplication in seeking to prove Count One against himself and the three other defendants charged, or in seeking to prove count Twenty-One against A. Cervantes and the two other defendants charged.

8

### 2. Factor Two: Use of Limiting Instructions

A. Cervantes does not address this factor directly but merely argues generically that jury instructions are "inadequate" in cases where "highly damaging evidence" is admitted that would not otherwise be admissible against the moving defendant. Here, again, an insufficient showing has been made that this is such a case.

As for the use of limiting instructions, the Court will, as courts are routinely called upon to do, instruct the jury throughout trial, as appropriate, namely "that it must consider the evidence against each defendant and evaluate each defendant's guilt separately . . . [,]" *Fernandez*, 388 F.3d at 1243. The Court also will instruct the jury on the law relevant to each count and substantive violation alleged. *See id.* ("Combined with its detailed instructions on the law governing conspiracies, and on substantive RICO violations, the district court's explanatory and limiting instructions to the jury are more than sufficient to guard against the possibility of prejudice to the defendants."). Given these safeguards, this factor does not weigh in favor of a severance.

### 3. Factor Three: Nature of the Evidence and Legal Concepts

With respect to this factor, *Fernandez* instructs: "Although the inclusion of several RICO and VICAR counts make[s] this case more difficult in terms of the legal concepts involved than was true for [other cases *Fernandez* cites], the predicate or underlying crimes alleged are well within the ability of the ordinary juror to understand." *Id.* at 1244. There, the predicate or underlying crimes included conspiracies to murder and drug trafficking conspiracies. *See id.* at 1221–22. Similarly, here, the alleged racketeering activity includes murder, robbery, drug trafficking, extortion, and obstruction of justice. The Court finds that an ordinary juror can understand these alleged acts. Moreover, as discussed above, distinct acts are at issue that jurors can readily compartmentalize. This factor does not weigh in favor of a severance.

### 4. Factor Four: Possibility of an Unreliable Verdict/Overlap with Motion to Continue Trial Date

A. Cervantes also argues in both the motion to sever and the motion to continue that, if evidence against his codefendants is admissible against him, the breadth of the evidence in this case requires severance because effective counsel can be prepared for trial no earlier than January

9

2017 – fifteen months after the Third Superseding Indictment and twenty months after indictment in the Initial Action. (MTC ¶ 14.)

"[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. The Court has addressed the issue of the reliability of any verdict, and now turns to the issue of effective assistance of counsel – also the basis for defendant's motion to continue the trial date.

The Court has considered the need to continue the trial date and, as indicated orally on October 21, 2015, a reasonable continuance is warranted. Cognizant of Sixth Amendment protections, the Court has considered: the role of defendant A. Cervantes in the Third Superseding Indictment; the nature, quantity, and timing of discovery provided to counsel; and the need for sufficient time to supplement the motion practice related to discovery, if necessary. (*See* MTS at 4.) Significantly, unlike the landscape of this action at the outset, the government is no longer pursuing death against any of the defendants. Thus, the considerable resources and time previously consumed and contemplated in setting a trial date are no longer relevant. Further, the Court has narrowed meaningfully the scope of the trial since the outset of this case.[11] Unlike a new action if the Court were to sever, the government has already identified trial exhibits and witnesses and is limited to those identifications in this action.

Given the defendant's needs and the current landscape of the action, the Court finds it most appropriate to deny severance and continue the trial date until June 15, 2016. Recognizing the impact of such a trial date on counsel's preparation, the Court also **ORDERS** the following measures. First, the Court authorizes an associate to assist trial counsel, a measure that would not

---

[11] Again, as ordered at the last hearing, the Court applies to A. Cervantes the rulings limiting the scope of the evidence as to the conspiracy from 1981 to events and circumstances subsequent to September 27, 2004. (Dkt. 687 at 16.) While A. Cervantes cannot make the same double jeopardy claim as that brought by defendants H. Cervantes and Larez, the Court's ruling in this regard inures to his benefit.

10

ordinarily be afforded. Second, the Court reiterates that it has ordered an informal proffer by the government outlining its case, to expedite the defense's review of voluminous discovery.[12] Third, additional orders directing the government to articulate its trial evidence more precisely are forthcoming from the Court. These measures will address the defense's concerns about wading through the discovery, much of which the defendant concedes is historical. Given the government's repeated assurances that it was prepared to proceed on January 11, 2016, these additional disclosures should not prove difficult for the government.

Finally, the Court has considered that counsel for A. Cervantes is not preparing the defense alone. While counsel maintains independent obligations to her client, her implication that she alone would have to identify and investigate all the witnesses and evidence is strained at best. Three other highly competent and nationally recognized defense counsel are fully informed, prepared for trial, and will also be defending the case. The competing demands of their schedules and that of the Court is also an appropriate consideration, which the Court similarly weighs.

Accordingly, based upon the continuance provided and the panoply of additional measures not normally provided, sufficient time is afforded to prepare adequately for trial. *Cf. United States v. Shirley*, 884 F.2d 1130, 1135 (9th Cir. 1989) (affirming denial of continuance when, among other factors considered, attorney had eighty-two days to prepare for a trial in which the government "planned to call over [seventy] witnesses").[13]

///

///

---

[12] The Court notes that the motion for a continuance referenced a short meeting with the prosecutor. However, the Court understands that the longer comprehensive meeting was to occur after the filing of the motion.

[13] A. Cervantes's counsel explains that she will seek relevant gang files from the California Department of Corrections and Bureau of Prisons, which "requires months of litigation as these entities inevitably file motions to quash." (MTS; *see also* McClure Decl. ¶12). The Court recognizes that such files may assist in preparing for trial, but will not speculate regarding the time this discovery will require. A. Cervantes may file later motions, as necessary, related to such discovery.

11

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** A. Cervantes's motion for severance and **GRANTS IN PART** the motion for a continuance. The trial date is hereby **CONTINUED** to June 15, 2016.

The Court further **ORDERS** that an associate is authorized to assist counsel for A. Cervantes prepare for trial.

This Order terminates Docket Nos. 732 and 773.

**IT IS SO ORDERED.**

Dated: October 28, 2015

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE